### SCHERY v. WELSTEAD.

(Supreme Court, Appellate Term. April 24, 1905.)

1. CONTRACTS—WORK AND LABOR—IMPLIED AGREEMENT.
　　Where plaintiff undertook the work of lining with copper defendant's water tank, he impliedly agreed to do the work in a good and workmanlike manner, and his failure to comply with such implied agreement not only defeated any recovery by him for his services, but entitled defendant to damages directly resulting from plaintiff's unskillful, negligent, and unworkmanlike work.

2. SAME—NONPERFORMANCE—EXCUSES.
　　The facts that plaintiff was told to hurry up the work, and that he found water in the bottom of the tank when he commenced, did not of themselves excuse his failure to properly do the work.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by Nicholas Schery against John J. Welstead. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before SCOTT, P. J., and LEVENTRITT and GREENBAUM, JJ.

Albert J. Appell, for appellant.

Daniel E. Lynch, for respondent.

GREENBAUM, J.　This action was brought upon two causes of action—the first, a balance of $103.40, concededly due on an account for work, labor, and services; and the second for $179.15, the alleged reasonable value of certain additional work, labor, and services performed by plaintiff upon defendant's request in lining a tank on the house No. 965 Fifth avenue with copper.　The controversy between the parties arises out of the second alleged cause of action.　The defendant denies that the reasonable value of the work is the amount claimed, and sets up a counterclaim for damages by reason of the careless, unskillful, and unworkmanlike manner in which the work was done.　It was practically undisputed that at the time when the plaintiff was engaged to do the work he was told that defendant was about to estimate for a contract for lining with copper a tank on the roof of the house No. 965 Fifth avenue, and that he asked the plaintiff about how much he thought the work of lining would amount to, he (defendant) to furnish the copper.　Plaintiff replied that he thought he ought to take three days for two men and a helper.　There is no dispute that thereafter plaintiff undertook to do this work, and that he was furnished with the required copper therefor.　It appears that shortly after the work of lining had been completed the tank began to leak, and that thereafter numerous complaints of leaking from the tank came from the owner to defendant, who in turn communicated the facts to plaintiff, and that the latter repeatedly went to the Fifth avenue house to attempt to repair the leaks.　Plaintiff admitted that his claim was made up of his time and material in and about the original work of lining and the many subsequent occasions when he attempted to repair the leaky conditions; that the reasonable value of the original lining of the tank was $37, and that the balance of the claim, to wit, $142.15, represented the reasonable value of the services and materials in the attempts to make the tank watertight.　Judgment was rendered in behalf of the plaintiff for $169.64 damages, made up presumably of the undisputed claim of $103.40 and $63.24 on account of the alleged second cause of action.　Whether, in arriving at this amount, the learned justice allowed the full claim of the plaintiff on his second cause of action and also allowed a portion of defendant's counterclaim, or merely found the value of plaintiff's services in lining and repairing the tank after it was discovered to leak at the sum of $63.24, it is impossible to say.　It seems to me, however, that the proofs unmistakably show that when the plaintiff absolutely undertook the work of lining the tank he agreed to do it in a good and workmanlike manner, and that the failure on his part to comply with that implied understanding would not only defeat any recovery on his part, but would entitle the defendant to damages directly resulting from plaintiff's unskillful, negligent and unworkmanlike work.　There is no doubt that the object of lining the tank was to make it water-tight, but that, as matter of fact, the result of plaintiff's work was to leave the tank

in a leaky condition, unfit to accomplish the purpose for which the plaintiff had undertaken to adapt it. The case is barren of proof on the part of plaintiff that he had properly and in a workmanlike manner performed his task, and he made no attempt to throw any light upon the causes of the numerous leaks, except that he was told to hurry up the work; and that he found water in the bottom of the tank when he started to work, which he was obliged to bale out. To find water in the bottom of a tank under such conditions was a most natural thing, and the court was not clearly enlightened what relation there was between that state of 'affairs and the numerous leaks that subsequently became manifest in the joints, or why it was that plaintiff should have been obliged to proceed with the work if he knew it could not be properly done immediately after the water had been removed from the tank. As the proofs stood, the plaintiff was not entitled to recover anything on his second cause of action, and the defendant was entitled to some damages on his counterclaim, although the testimony, as adduced, would by no means have justified the allowance of many of the items included therein.

The judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.